## Stine's Estate.

*Practice—Orphans' court—Reference of report back to auditor—Findings of fact.*

The orphans' court has the power to refer an auditor's report back to the auditor for further findings of fact where it appears that the facts found are meager, and that the court cannot reach a just conclusion on the facts reported.

*Will—Ademption of legacy—Assignment of insurance policy.*

Where a testator assigns absolutely a paid up policy of life insurance on his own life to his brother who undertakes to pay, and does pay the expenses of the education of testator's son, which amounted to about the value of the paid up policy at the time of the assignment, and subsequently the testator died leaving a legacy to the. son by a codicil prior in date to the assignment of about double the amount of the expenses paid for his education, the legacy is adeemed to the extent of such expenses. In such a case the ownership of the proceeds of the policy in excess of the sum paid for the son's education cannot be determined by the orphans' court upon the adjudication of the executor's account. Whether the assignee took the policy at its value at the time of the assignment or took it merely as security for advancements which he was to make to the son for his education, are questions which can be determined only in a suit between the executor and the assignee of the policy.

Argued Dec. 6, 1900. Appeal, No. 36, Oct. T., 1899, by R. Frank Stine et al., from decree of O. C. Lehigh Co., June T., 1899, No. 48, dismissing exceptions to auditor's report in the Estate of Henry Stine, deceased. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Exceptions to report of W. L. Gillette, Esq., auditor.

From the record it appeared that the auditor filed two reports. The first report was referred back to him for a fuller findings of facts. On exceptions to the second report, ALBRIGHT, J., filed the following opinion:

Henry Stine, the testator, died December 24, 1896, aged about seventy-three years. He left surviving him a widow, a second wife, John, a son of the latter, and four children by a former wife. In a codicil of date of October 26, 1892, testator provided that out of the first proceeds of his life insurance policies the sum of $3,000 should be paid to his son John; that this sum was given for the purpose of equalizing him as nearly as possible with testator's other children to whom he had made "advancements for their education," etc.

Testator then held a scholarship in Muhlenberg college at Allentown. Two of his older sons had graduated there. It was contemplated by the testator then that John, who was then about twenty years of age, should take a course at Muhlenberg, for he entered the preparatory school of the college in November, 1892, (he graduated there in 1897).

Lewis S. Lenhart was a half brother of John, being the son of the latter's mother by a former husband.

On November 16, 1892, the testator assigned absolutely a paid up policy on his life in the New York Life Insurance Company upon which there was due at the insured's decease about $2,565 to said Lenhart. Concerning said assignment Lenhart testified: " He gave it to me to send John Stine to college; I was to pay out of the proceeds of the policy John's expenses in getting an education. I paid Henry Stine no money at the time for the policy. After Mr. Stine's death I drew the amount of the policy, about $2,750 " (out of that he paid to the executors' $161.07, income accrued at the time of assignment). "I paid John's expenses of going to college . . . . $1,442.20 . . . . that is all I paid to him or for him . . . . the balance of the proceeds of the policy I still have . . . . I agreed to pay all of John's expenses through college . . . . the cash value of the policy at the time I took it was $1,469.26, the balance between the face value of the policy and what I paid out I claim as mine, that is the difference between $2,560 and $1,442.20. . . . Nothing was said to me by the decedent as to what should be done with the balance of the proceeds of the policy after John received his education.

As remarked, John graduated at said college, Lenhart paid his expenses while attending there, amounting to $1,442.20; interest on the payments amounted to $126.58, a total of

$1,568.78.   The learned auditor decided that said $3,000 legacy to John was adeemed to the extent of $1,568.78, and awarded to John the residue, $1,431.22.   To this action John and the residuary legatees excepted.

An ademption of a legacy takes place where a parent bequeaths a legacy to a child, and afterwards gives a portion to the same child which is ejusdem generis.   If there be nothing on the face of the will and no circumstances in proof to indicate an intention to give a double portion, the advancement will be a satisfaction or ademption of the legacy: Swoope's App., 27 Pa. 58.

There may be an ademption pro tanto: Gill's Est., 1 Pars. Eq. Cases, 139.

A testator bequeathed $1,250 to trustees to be used as his nephew required to complete his studies at a particular college, with a proviso that if the latter wished to discontinue his studies at said college then said amount or what was left of it should go to said college; the nephew had entered the college before the date of the will; he graduated from the collegiate department, entered that of theology, but left without completing the course; the testator paid the nephew's expenses while at college amounting to $1,295.   It was held that the payment of the college expenses operated as an ademption of the legacy: App. of Ursinus College, 1 Monaghan, 196.

While the education of John was considered by the testator, it did not entirely control.   The expressed purpose of the legacy of $3,000 was to equalize him with the older children to whom he had made advancements for purposes including an education. The idea conveyed is that each of the older ones had received about $3,000; no doubt more had been expended for education of the two who passed through college, than for the other son and daughter.

The testimony of Mr. Lenhart being relied on to explain the absolute transfer to him, must be accepted as a whole.   It is the only evidence as to consideration for, or conditions of, the transfer of the policy.   He says he agreed with the testator to pay all the expenses of John's collegiate education.   The testator was of the conviction that Mr. Lenhart could and would keep that promise as he actually afterwards did.

Evidently it was not contemplated by either party that Mr.

Lenhart should be a loser by the transaction ; he was to advance the money, which probably the testator did not then have available, and was to be made whole for the outlay so far as the proceeds of the policy would accomplish that purpose ; it is a fact that the value of the policy then was $1,469.26.

John ought not and does not seriously complain that Mr. Lenhart is made whole including interest on what he expended. The residuary legatees are benefited by the decision that the legacy is adeemed to the amount of $1,568.78 instead of $1,469.26.

The testator did not bestow the policy on John. The result of the transaction of transfer was to benefit John to the extent of $1,568.78 and no more. If anything beyond that is taken to have been given it was to a third person, that is, to Mr. Lenhart. If the latter is answerable either to John or to the executors for the excess, the court has not jurisdiction to decide as to such liability in this proceeding. In order that there might be a decision as to that, Mr. Lenhart must be summoned and accorded a day in court. There is no demand to surcharge the executors with such excess, no allegation that they ought to have realized it from Mr. Lenhart, and in violation of duty failed to do so.

The case of John must be regarded to be the same as if the testator in his lifetime after making the testamentary provision of $3,000 had given to him or paid for his education the sum of $1,568.78.

The argument, that what was realized on the policy must be deducted from the legacy, both having been payable at testator's decease, would be sound if the assignment had made the policy the property of John. But as already stated he did not become the owner of the policy. It is not shown that Mr. Lenhart voluntarily gave John the $1,431.22.

The action of the auditor is approved.

July 5, 1899, the exceptions are dismissed and the reports confirmed.

*Error assigned* was the decree of the court.

*Edward Harvey*, with him *John Rupp*, for appellants.—Trusts in personal property may be proved by parol: Osmond's Est., 161 Pa. 542; Smith's Est., 144 Pa. 428; Maffitt v. Rynd, 69 Pa. 380.

That the assignment of the policy operated as an ademption of the legacy is not open to question: Zeiter v. Zeiter, 4 Watts, 212; Swoope's App., 27 Pa. 58; Miner v. Atherton, 35 Pa. 528; Gill's Est., 1 Parsons' Equity Cases, 139; Garrett's App., 15 Pa. 212; Baily v. Herkes, 1 P. & W. 126; Ursinus College's App., 23 W. N. C. 261.

*K. Preston Erdman*, with him *C. J. Erdman* and *T. F. Diefenderfer*, for appellee.—Where a testator standing in loco parentis makes a gift to his legatee, directly or indirectly of a considerable amount, substantially identical ·in kind with a prior bequest, the courts will, without direction in the testament, presume, unless a contrary intention be shown, that such gift was intended to be applied as a part of the legacy; and the latter will be treated as adeemed pro tanto or in toto, according as it exceeds or merely equals the gift: Bird's Est., 132 Pa. 164.

There is no principle of equity which will perfect an imperfect gift, and a court of equity will not impute a trust where the trust was not in contemplation: Smith's Est., 144 Pa. 428.

OPINION BY BEAVER, J., January 22, 1901:

The adjudication in this case was made with the utmost care and circumspection. The facts are fully set forth in the opinion of the court below. It is not necessary to restate them here. The appellant assigns as error the action of the court below in referring the first report of the auditor back for the finding of additional facts. Abundant justification for this reference is found in the opinion of the court below directing it, in which the court says: "The court is of the belief that a just decision requires a regarding of facts not now appearing. The argument before the court above referred to indicates that counsel are of the same opinion. The facts found are meager." Then follow at least twelve distinct questions as to which the court desired definite information, in order to a proper understanding and disposition of the case. All this shows a desire on the part of the court to be properly furnished with all the pertinent facts necessary to reach a just conclusion in a question of such importance. A court undoubtedly has such a right. The reference back was eminently proper and is fully justified by the result. This must have been apparent to the appellant's

counsel, as these specifications are practically abandoned, or at least not referred to in the argument.

As the appellant pertinently remarks in the opening sentence of his argument, " There is no dispute about the facts of this case and none about the principles of law involved in it. " · The assignment of the life insurance policy, which is the bone of contention, made by the testator to Lenhart, was absolute on its face. Four years after the assignment, as is admitted by Lenhart, he received $2,565. Out of this, he had paid for John's education $1,442.20, which, with interest on the payments as made, $126.58, constituted the amount, $1,568.78, which the auditor found to be an ademption pro tanto of John's legacy of $3,000, bequeathed by the last codicil of the testator's will. He, therefore, awarded him the balance of the legacy, $1,431.22, out of the balance for distribution. From this finding, confirmed by the court, spring all the various assignments of error other than those hereinbefore referred to.

It is clear that John received no benefit from the policy assigned to Lenhart other than that with which he is charged. The difference between that amount and the amount of the policy, as paid to Lenhart, is in his possession, claimed by him as rightfully his. John apparently has no right of action against him, for he was not in any way a party to the transaction by which the policy was assigned to Lenhart and, if the latter's testimony be taken as verity, he had no interest whatever in the policy, except that which he received. The right to recover the balance from Lenhart, if it exists, would, therefore, seem to be in the legal representative of the testator, which right could neither be considered nor enforced in this proceeding, as the court below very pertinently remarks. Whether Lenhart took the policy at its value at the time of the assignment or took it merely as security for advancements which he was to make to John for his education, are questions which need not now be considered, as they will be passed upon in another tribunal, at another time.

The questions involved are so fully passed upon in the opinion of the court below, that we do not deem it necessary to discuss them at greater length. All the points involved are fully considered and clearly disposed of. No error is apparent in the disposition made of the case and the decree is, therefore, affirmed.